**Charles C. WADE, Plaintiff,**

v.

**Perrin Q. DARGAN, Jr., and one 1959 Opel Coach Automobile, bearing 1960 South Carolina License Number A–10074, Defendants.**

**Civ. A. No. 2840.**

United States District Court
W. D. South Carolina,
Spartanburg Division.

June 23, 1961.

**2**

John C. Williams, Spartanburg, S. C., for plaintiff.

Butler & Chapman, Spartanburg, S. C., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendants.

WYCHE, Chief Judge.

This is an action by the plaintiff to recover damages for personal injuries sustained by him while riding as a guest passenger in the automobile of the defendant. The right to recover is governed by the South Carolina Guest Statute, Section 46–801, Code of Laws of South Carolina, 1952.

The case was tried before me without a jury. By consent of counsel for the parties I inspected the scene of the accident.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. The plaintiff and Dwight Patterson, Wofford College students, after eating supper at Smitty's restaurant, and at about 8:30 p. m., on February 1, 1960, were invited by the defendant Perrin Q. Dargan, Jr., another Wofford College student, and a close friend of Patterson's, to ride with him in his foreign-built, 1959, 2-door Opel coach, which is one of the smaller compact type automobiles, to the Topper Drive-In, another restaurant. At this time the plaintiff was twenty-one years old and the defendant was twenty-one years old.

2. Patterson, in effect, accepted the invitation but the plaintiff said he wanted to get out at the college.

3. Patterson, the plaintiff, and the defendant got into defendant's automobile, the plaintiff on the front seat with the defendant, and Patterson in the rear seat. The plaintiff thought that the defendant was going to drop him at the college.

4. After traveling about a mile, the defendant, instead of going to Wofford College to put the plaintiff out, turned off on Evins Street, and drove behind Wofford College football stadium onto a road that lead through Beaumont Mills Village.

5. In going around a curve on Evins Street behind the college football stadium, the tires on the defendant's automobile "squealed just a little bit" and either the plaintiff or Patterson said to the defendant, "Take it easy, Pep. You are going a little too fast" or "You had better slow down—curve", or words to that effect. When the defendant, some distance farther, drove past a stop-sign near Beaumont Mills without stopping, Patterson said to the defendant, "Pep, you ran a stop-sign" and the defendant said "Nobody was coming".

6. The defendant drove at a reasonable rate of speed until just before he entered the curve where the accident happened.

7. Just before he entered the curve where the accident occurred, the defendant said, "Watch me take this curve" and suddenly speeded up. The car seemed "to shoot out" and "take off", slinging Patterson, who was leaning forward with his arms on the front seat, back against the rear seat. It happened so quickly that neither the plaintiff nor Patterson had time to ask the defendant to stop and let them out. When the car started leaving the highway, the defendant applied his brakes and skidded to the left across the highway for a distance of 90 feet into a three or four foot ditch and along the ditch and edge of the highway for 63 additional feet, colliding with a concrete culvert that goes under the driveway leading to Mulligan Vault Company, knocking a three-foot dent in the concrete culvert and demolishing it (Plaintiff's Exhibit 3). The car came to rest partly in the driveway of the Mulligan Vault Company and the front-end was severely smashed and the car was damaged about $1,000.

8. The highway approaching the curve was in a 35-mile-an-hour speed zone. The curve at which the accident occurred was a dangerous, approximately 90° curve, "almost straight around"

(Plaintiff's Exhibit 2); there was a traffic control warning sign 355 feet from the point of the curve, and which of necessity the defendant had to pass before reaching the curve; the defendant knew this curve was there, was familiar with it and had driven around it several times previously.

9. On the night of the accident the weather was clear and the road was dry. Defendant testified that if he had not been going at an excessive rate of speed he "would not have had the trouble"; that he approached the curve at about 45 or 50 miles an hour, and may have increased his speed some, and that ordinarily he could stop his Opel automobile at a speed of 50 miles an hour in 75 or 100 feet.

10. Considering the weight of the evidence, the demolished concrete pipe, the condition of defendant's car, a view of the scene of the accident and the physical facts, the defendant must have been traveling at least sixty miles an hour when he applied his brakes.

11. Before the defendant invited plaintiff and Patterson to go to the Topper Drive-In, plaintiff and Patterson had had several beers, but no whiskey. The defendant had eaten supper and had had no alcoholic beverages before he went to Smitty's at about 7:30 p. m.; after he got to Smitty's, he testified that he had two or three drinks of whiskey and one beer. Neither the behavior nor the actions of the plaintiff or Patterson or the defendant indicated that they were drunk or under the influence of intoxicants. Plaintiff did not think defendant was under the influence of liquor. The defendant appeared in no way unable to drive his automobile and was acting normally and in complete possession of his faculties when the three boys left Smitty's restaurant. The defendant testified that he was sober enough to drive his automobile and that he did not do anything to make the plaintiff and Patterson think he could not drive his car. Patterson was not drunk nor was he under the influence of alcoholic beverages; the plaintiff was not drunk nor was he under the influence of alcoholic beverages; the defendant was not drunk nor was he under the influence of alcoholic beverages.

12. The plaintiff and the defendant were not "real good friends". The plaintiff knew the defendant "to speak to him on the campus" but they had never "buddied" around together. The plaintiff had never actually "been off with" the defendant. The plaintiff had never ridden with the defendant in his automobile before this occasion and was not familiar with the curve where the wreck occurred.

13. The defendant testified that he had not done anything to justify the plaintiff or Patterson to ask him to stop the car and let them out, either "before" he came down to the place where he "had the wreck" "or before" he "hit this curve".

14. The plaintiff had no reason to believe or suspect that the defendant was intoxicated or was not in complete possession of his faculties before the accident occurred, nor did he know of any fact or circumstance indicating that the defendant was a careless and reckless driver of his automobile.

15. The plaintiff was not guilty of contributory negligence or contributory recklessness, wilfulness or wantonness.

16. The defendant was negligent and reckless in failing to have his car under proper control so as to avoid leaving the road and skidding into a concrete culvert, and in driving at an excessive and unlawful rate of speed, in failing to drive at an appropriately reduced rate of speed when approaching and going around such a sharp curve known to him, and when warned thereof by an adequate and proper sign. Such negligence and recklessness was the proximate cause of the injuries and damages to the plaintiff.

17. As a result of the accident, the plaintiff was knocked unconscious and suffered considerable pain; when he arrived at the hospital he was conscious

**4**

but could not talk because his jaw was broken on both sides and pushed back under his tongue until the point of the jaw was approximately half-way back to the angle of the jaw—straight in, tearing out the structure of the floor of his mouth and tearing out eleven teeth and breaking off several others; he was bleeding rather profusely about the mouth and face; he had a cut on his left knee and several small cuts on his forehead and lip; his chin was mashed in and a large incision under his chin had to be made in order to repair it; plaintiff's jaw on both sides where it was broken was wired with stainless steel wire and pulled back in position; holes were drilled on both sides of the jaw and wires pulled through and pulled down tight to hold the jaw-bone in its normal position. During cold and rainy weather plaintiff suffers considerable pain; he has trouble eating which is quite embarrassing, he cannot eat hard food unless he puts it in the back of his mouth "kind of sideways"; because of the injury to his left knee he cannot kneel and put pressure on it; his chin is numb; because of the pain he suffered he could not concentrate and study after the accident, and consequently failed two courses and did not graduate in June, 1960, and will either have to go to summer school for two terms, or a whole semester of school, and incur the expense for the same. Plaintiff suffered permanent injuries as follows: A very shallow, flat and hollow area beneath his tongue instead of the normal membrane because of the damage to the floor of his mouth beneath the tongue and the membrane and fatty tissue lost and the small chips of bone lost; loss of eleven teeth; flesh under his tongue is gone; scars; the loss of a considerable amount of the lower jaw-bone, in the middle where his teeth were torn out of the bone, taking a part of the bone with them. Plaintiff has been under the care and treatment of doctors and a dentist ever since the accident and still needs extensive dental work. The plaintiff has suffered, is still suffering and will continue to suffer

considerable pain by reason of the injuries received in the accident.

18. Plaintiff has incurred hospital, doctor and dentist bills and will incur considerable more expense for dental work.

19. Plaintiff is entitled to recover Fifteen Thousand ($15,000) Dollars, actual damages against the defendant.

## Conclusions of Law

■ 1. When this action was commenced the plaintiff was a resident of Florence, South Carolina, in the Eastern District of South Carolina, and the defendant was a resident of Tampa, Florida, in the Southern District of Florida. The jurisdiction in this case is founded upon diversity of citizenship. This action, therefore, should have been brought either in the Eastern District of South Carolina, where the plaintiff resides, or in the Southern District of Florida, where the defendant resides. 28 U.S.C.A. § 1391(a). However, objection that the complaint was filed in the wrong district was not taken before entry of general appearance by the defendant, or before some other defense upon the law or the facts was set up. The objection to venue was not included in the answer or upon a motion previously made. The defendant appeared generally and answered the complaint upon the merits. Therefore, the defendant waived any objection to the venue. See, Evans v. Rushing, D.C.S.C., 175 F.Supp. 90, and the authorities cited therein.

2. In this case the evidence shows that the defendant violated at least four statutory provisions of the Code, Sections 46–361, 46–362, 46–363, 46–342, Code of Laws of South Carolina, 1952. Fuller v. Bailey, 237 S.C. 573, 118 S.E. 2d 340.

■ 3. Plaintiff under the facts of this case was not required to anticipate negligence or recklessness on the part of the defendant; in the absence of any fact or circumstance indicating that the driver is incompetent or careless, an occupant of a vehicle is not required to

anticipate negligence on the part of the driver; in the absence of any fact or circumstance indicating the contrary, a passenger need not anticipate that the driver, who has exclusive control and management of the vehicle, will enter a sphere of danger, omit to exercise proper care, to observe warning signals, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel. Cummings v. Tweed, 195 S.C. 173, 10 S.E.2d 322.

4. The plaintiff was not guilty of contributory negligence or contributory recklessness by and when riding with the defendant in his automobile.

5. The defendant was heedless and reckless in failing to have his car under proper control so as to be able to avoid leaving the road, and in driving at an excessive and unlawful rate of speed, in failing to drive at an appropriately reduced rate of speed when approaching, entering and going around an almost 90° curve, which he was familiar with, and when warned thereof by an adequate and proper sign, and such heedlessness and recklessness was the proximate cause of the injury and damage to the plaintiff.

6. In this case the greater weight of the evidence is such as to establish heedlessness and recklessness of the defendant in the operation of his car to satisfy the requirements of the South Carolina Guest Statute. Fuller v. Bailey, 237 S. C. 573, 118 S.E.2d 340; Meek v. Harris, 4 Cir., 256 F.2d 579. It is sufficient to require me to find as a matter of fact that the defendant was negligent and reckless in that degree which permits a recovery by a guest under the laws of South Carolina. Hardigg v. Inglett, 4 Cir., 250 F.2d 895.

7. The plaintiff, therefore, in my opinion, is entitled to judgment against the defendant in the total sum of Fifteen Thousand ($15,000) Dollars, actual damages.